**Ex parte Adrian CHAVEZ, Applicant.**

**No. AP–75245.**

Court of Criminal Appeals of Texas.

Nov. 22, 2006.

Rehearing Denied Jan. 31, 2007.

Randy Schaffer, Houston, for Appellant.

Baldwin Chin, Assistant District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## *OPINION*

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, KEASLER, HERVEY and COCHRAN, JJ., joined.

We filed and set this post-conviction application for writ of habeas corpus, brought pursuant to Article 11.07 of the Code of Criminal Procedure,[1] in order to consider the recommendation of the convicting court that the applicant receive a new punishment proceeding on the basis of evidence of actual innocence. The convicting court did *not* recommend that the applicant be granted a new guilt-phase proceeding. We hold that, at least on the facts presented in this application, a new punishment proceeding is not warranted under the guise of actual innocence, or any other due-process principle, and we deny relief.

## THE FACTS

The applicant was indicted and tried for capital murder, but convicted of the lesser offense of aggravated robbery, and sentenced to fifty-five years in prison. His conviction was affirmed on direct appeal.[2] The case involved the home invasion of a drug dealer, who was fatally shot during the course of the incident. Two witnesses who were present testified at trial that the applicant was the shooter. One claimed that he recognized the applicant when, at one point, the applicant pulled down the bandana that had been covering his face. The other identified the applicant because he claimed to recognize the applicant's voice and his physique. The applicant testified to an alibi, but he was unable to produce any corroborating witnesses.

While the jury was out deliberating the applicant's guilt or innocence, the applicant informed his trial counsel for the first time that he had indeed been involved in the robbery, but only as the wheel-man rather than one of the home-invaders. He denied being the shooter. At the applicant's request, his trial counsel arranged a meeting with the prosecutor so that they could convey this information to her. Before the applicant and his counsel could conclude their meeting with the prosecutor, however, the jury returned its verdict of guilty. Later, after the jury returned its punishment verdict and the trial court pronounced sentence, the applicant's trial counsel conducted an informal colloquy on the record with the applicant to establish these facts.

In the course of its subsequent investigation, the State identified other witnesses, previously unknown to the State,

1. TEX.CODE CRIM. PROC. art. 11.07.

2. *Chavez v. State*, No. 14–98–696–CR (Tex. App.-Houston [14th], delivered May 11, 2000, pet. ref'd).

who could testify that two other individuals had admitted to perpetrating the home invasion, one of whom was the actual shooter in the case rather than the applicant. Both of those individuals were subsequently charged with, and pled guilty to, aggravated robbery, and each was assessed a thirty-year sentence. Even so, both of the witnesses who originally identified the applicant as the shooter in the case have submitted affidavits in which they assert that they still believe, based upon their perceptions of the event, that the applicant is the one they saw kill the drug dealer, and that they would testify again to that effect. The prosecutor at the applicant's trial has also submitted an affidavit in which she asserts that at the time of trial, she had no knowledge of any evidence that the applicant was *not* the shooter, and no reason to disbelieve or distrust the witnesses who testified against him at his trial.

In its recommended findings of fact and conclusions of law, the convicting court has concluded that, because of the "newly discovered evidence" that someone other than the applicant was the shooter, the applicant is entitled, not to a new trial, but to a new punishment proceeding.[3] "The totality of the circumstances undermines the [convicting] court's confidence in the sentence of 55 years. *See Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)." We filed and set the cause to consider this recommendation. Especially given the particular circumstances of this case, we decline to follow it.

## THE LAW

In *Ex parte Elizondo,*[4] this Court held for the first time that, because the incarceration of an innocent person violates the Due Process Clause of the Fourteenth Amendment, a bare claim of actual innocence is cognizable in state post-conviction habeas corpus proceedings. We recognized, however, that in order to obtain relief on this basis, a habeas applicant must satisfy an "extraordinarily high" standard of proof.[5] He must "unquestionably establish" his innocence; that is to say, he must show by clear and convincing evidence that, presented with both the inculpatory evidence at trial and the newly discovered or available evidence of innocence, no reasonable juror would have convicted him.[6] Utilizing this standard, we granted Elizondo a new trial, and have subsequently granted other new trials, albeit rarely, on the basis of actual inno-

---

**3.** The jury acquitted the applicant of capital murder and murder. The trial court instructed the jury on the law of parties under Section 7.02(a)(2) of the Texas Penal Code, but *not* Section 7.02(b). The witnesses who identified the applicant as the shooter were impeached, and the jury might rationally have chosen to disbelieve them. If the jury also believed the applicant did not have any intent to facilitate a *murder,* but only a robbery, they could rationally have acquitted the applicant of capital murder and murder, in the absence of a "conspiracy" parties charge under Section 7.02(b). At the same time the jury could rationally have disbelieved the applicant's testimony that he had no involvement in the robbery at all. Other evidence at trial showed that the applicant had indeed been involved in the planning of the robbery. Thus, even if the applicant was only the wheel-man in the instant offense, as the evidence now preponderates to show and the State seems to concede, a rational jury could nevertheless have found him guilty as a party to the aggravated robbery. For this reason, we agree with the convicting court's implicit assessment that the applicant has not shown actual innocence of the offense itself. We did not file and set the cause to address that question.

**4.** 947 S.W.2d 202 (Tex.Crim.App.1996).

**5.** *Id.* at 208.

**6.** *Id.* at 209.

cence.[7] And in *Ex parte Tuley*[8] we held that a guilty plea does not foreclose a habeas applicant from asserting actual innocence.

While recognizing that certain principles of due process also apply at the punishment phase of a non-capital trial, we have hesitated to apply the nomenclature of "actual innocence" to due process violations that occur at the punishment phase. For example, a plurality of the Court eschewed the particular rubric of actual innocence, *per se,* when it held, in *Ex parte Carmona,*[9] that the revocation of deferred-adjudication community supervision based upon admittedly perjured testimony violated the applicant's due process rights.[10] And most recently, in *Ex parte Rich,*[11] we resisted applying an actual-innocence rationale to hold that the applicant was "actually innocent of being an habitual felony offender … because of newly discovered evidence showing that he is being wrongfully imprisoned for a criminal history he did not have." [12] We observed that enhancement as an habitual offender based upon prior convictions that were not, in fact, felonies "does not involve the traditional hallmarks of actual innocence—newly discovered evidence showing that the defendant is being wrongfully imprisoned for a crime that he did not commit." [13]

We therefore employed an alternative basis to grant Rich relief. The question before us in the instant case is whether the applicant is entitled to a new punishment proceeding, either under our "actual innocence" precedents, as the convicting court has recommended, or any other operative principle of due process.

## ANALYSIS

To begin with, we believe it is odd to speak in terms of being "actually innocent" of a particular punishment (say, fifty-five years) that is prescribed within the statutory range for the offense upon which an applicant has been convicted. We have frequently observed that the task of setting a particular length of confinement within the prescribed range of punishment is essentially a "normative" judgment.[14] Aside from a few specific instances where the range of punishment depends upon the determination of discrete facts,[15] "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." [16] Indeed, we have described the sentencer's discretion to impose any punishment within the prescribed range to be essentially "unfettered." [17] Subject only to a very limited, "exceedingly rare," and somewhat amorphous Eighth Amendment gross-dis-

7. *E.g., Ex parte Harmon,* 116 S.W.3d 778 (Tex.Crim.App.2003); *Ex parte Thompson,* 153 S.W.3d 416 (Tex.Crim.App.2005).

8. 109 S.W.3d 388 (Tex.Crim.App.2002).

9. 185 S.W.3d 492 (Tex.Crim.App.2006) (plurality opinion).

10. Indeed, in his concurring opinion, Judge Womack expressly invoked *Elizondo* as the more appropriate basis for relief in *Carmona.* *Id.* at 497 n. 1.

11. 194 S.W.3d 508 (Tex.Crim.App.2006).

12. *Id.* at 517 (Womack, J., concurring).

13. *Id.* at 515.

14. *Sunbury v. State,* 88 S.W.3d 229, 233 (Tex. Crim.App.2002); *Mendiola v. State,* 21 S.W.3d 282, 285 (Tex.Crim.App.2000); *Rogers v. State,* 991 S.W.2d 263, 265 (Tex.Crim.App. 1999); *Miller–El v. State,* 782 S.W.2d 892, 895–96 (Tex.Crim.App.1990); *Murphy v. State,* 777 S.W.2d 44, 63 (Tex.Crim.App.1988) (plurality opinion on State's motion for rehearing).

15. *See Murphy v. State, supra,* at 62–3 n. 10.

16. *See* note 14, *ante.*

17. *Miller–El v. State, supra,* at 895.

proportionality review,[18] a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal. For this reason, the concept of an applicant who may be "actually innocent" of a fifty-five year prison sentence is, to say the least, peculiar.[19] We therefore eschew, as unhelpful to our analysis, the particular language of "actual innocence" as it might apply to the sentencer's assessment of punishment within the legislatively prescribed range.

■ But this does not end our due process analysis—far from it. What if the sentencer's normative judgment has been affirmatively misinformed? Putting aside the rubric of "actual innocence" for the moment, do principles of due process dictate that we hold that the first punishment proceeding was intolerably unfair and that a second punishment proceeding is therefore in order? [20] And does it matter, for due-process purposes, whether the fact that the sentencing entity was affirmatively misinformed can be attributed to some act or omission on the part of the State, or that the defendant may have had some complicity in generating the misinformation, or was aware of it but failed to correct it at trial when he reasonably could have?

■ The duty of the State to disclose material exculpatory evidence pertains to

---

**18.** *See Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (that a "gross-disproportionality" principle applies to sentences of terms of years under the Eighth Amendment is "clearly established" federal law, but Supreme Court case law on the subject "exhibit[s] a lack of clarity regarding what factors may indicate gross disproportionality."). *See also, e.g.: Thomas v. State,* 916 S.W.2d 578 (Tex.App.-San Antonio 1996, no pet.); *Jacobs v. State,* 80 S.W.3d 631 (Tex.App.-Tyler 2002, no pet.); *Davis v. State,* 125 S.W.3d 734 (Tex.App.-Texarkana 2003, no pet.).

**19.** It is true that the United States Supreme Court has recognized a very narrow exception to the principle of finality in federal habeas corpus proceedings for claims of "actual innocence of the death penalty." A federal habeas applicant in a capital case who can show he is "actually innocent" of the death penalty may raise an underlying federal constitutional claim in federal habeas proceedings, even though he has procedurally defaulted that claim by failing to raise it in state proceedings or in an initial federal writ. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1995). But in order to establish "actual innocence of the death penalty" for these purposes, a federal habeas applicant must meet the onerous burden of showing "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty[.]" *Id.* at 348, 112 S.Ct. 2514.

The Supreme Court has yet to recognize a bare claim of "actual innocence of the death penalty."

In any event, even in the *Sawyer* context, "actual innocence of the death penalty" does not extend to a showing of evidence that merely informs a jury's *discretionary* authority to assess a punishment *less than* death. It extends only to evidence that negates the statutorily specified *aggravating* factors that *elevate* the offense to capital status, since such evidence would establish that the federal capital habeas applicant was not even *eligible* for the death penalty, and the jury would have no discretion to assess death. *Id.* at 340–348, 112 S.Ct. 2514. Thus, even in the capital context, "actual innocence" does not apply to purely discretionary, non-fact-bound aspects of the sentencing decision.

**20.** It is important to keep in mind in addressing this question that the Eighth Amendment does not mandate individualized sentencing in non-capital cases. *See Harmelin v. Michigan,* 501 U.S. 957, 995 & 1006, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Scalia, J., announcing judgment of the Court; Kennedy, J., concurring). Thus, apart from the amorphous "gross-disproportionality" standard, *see* note 18, *ante,* the Eighth Amendment, as distinguished from the Due Process Clause, imposes no apparent limitation on the discretion of the sentencing entity, be it judge or jury, including any requirement that punishment be informed by the particular circumstances of the offense and/or the offender.

the punishment phase as well as the guilt phase of a criminal trial.[21] Moreover, the Due Process Clause "makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence."[22] Malfeasance of this kind on the part of any member of the prosecution "team" may be attributable to the State for due-process purposes.[23] The record in this cause does not reveal any act or omission on the part of the State or any of its agents that caused the applicant's sentencing jury to be misinformed about the true nature of his involvement in the offense. We fail to perceive any unfairness to the applicant on that account.

Furthermore, even in the context of the failure to disclose exculpatory evidence, we have held that there is no due process violation under circumstances in which the defendant himself already knew about the exculpatory facts.[24] In the instant case, the applicant knew the true extent of his involvement in the offense. Had he disclosed that information to his trial attorney sooner than he did, counsel could have attempted to investigate the circumstances that corroborated the applicant's account, to assure that the jury would be informed of all the evidence tending to show he was not the shooter.[25] Alternatively, the applicant's attorney might have attempted to broker a plea bargain by which the applicant could have timely cooperated with the State in identifying the actual home-invaders, and perhaps have obtained a sentence that was at least no greater than the thirty-year sentences that the two actual home-invaders received, once they were belatedly discovered and pled guilty. Instead, the applicant affirmatively misled his own counsel and chose to testify, apparently falsely, to an alibi in an attempt to escape criminal liability altogether. Thus, any misinformation the jury received to inform its discretionary decision with respect to what punishment to assess the applicant within the statutorily prescribed range would appear to have been his own fault, if anyone's. We cannot conclude on these facts that he received an unfair punishment proceeding.

On top of these considerations, it is doubtful that new evidence that the applicant was not the actual shooter could be regarded as "material" on the facts of this particular case. Borrowing once again from the due-process vernacular in the context of the suppression of exculpatory punishment evidence, we do not think

---

21. *E.g.*, *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

22. *Strickler v. Greene, supra; Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Ex parte Mitchell*, 977 S.W.2d 575, 578 (Tex.Crim.App.1997).

23. *Kyles v. Whitley*, 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Ex parte Mitchell, supra; Ex parte Castellano*, 863 S.W.2d 476 (Tex.Crim.App.1993); *Ex parte Adams*, 768 S.W.2d 281 (Tex.Crim.App.1989).

24. *Harris v. State*, 453 S.W.2d 838, 839 (Tex. Crim.App.1970); *Carmona v. State*, 698 S.W.2d 100, 105 (Tex.Crim.App.1985); *Havard v. State*, 800 S.W.2d 195, 204–5 (Tex. Crim.App.1989). *See Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir.1997). *See also* George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 22.29 (2nd Ed.2001), at 27 ("If the defense was actually aware of exculpatory evidence, the State's nondisclosure does not give rise to a due process violation. The defendant's right to a fair trial cannot be affected by the nondisclosure of information already known to the defense.")

25. It is true that the neither the applicant nor his attorney knew prior to trial about the witnesses who would later attest that the actual home-invaders admitted their involvement in the shooting. But then again, neither did the State until it followed up on the applicant's own belated admission.

there is a reasonable probability that its disclosure would have changed the jury's assessment of punishment.[26] That the jury acquitted the applicant of capital murder and murder suggests that the jurors did not believe he was the shooter in any event; otherwise, they would not have had any rational basis to acquit him of the homicide offenses but still convict him (presumably as a party) of aggravated robbery.[27] Because it appears that the jury in its capacity as the sentencing entity did not believe the applicant was the shooter in any event, we do not believe there is a reasonable probability—that is to say, a probability sufficient to undermine our confidence in the outcome—that the jury would have assessed anything other than the fifty-five-year sentence that it actually did assess.[28]

Finally, the witnesses who identified the applicant as the shooter at his trial still believe he was the shooter and have averred in their affidavits that they would again testify to that effect. It would be difficult to conclude under these circumstances that the applicant has shown by clear and convincing evidence that *no* reasonable juror would find he was the shooter in a retrial.[29] It is not, therefore, a foregone conclusion that the applicant has "unquestionably established" that his first jury was misinformed with respect to whether he was the shooter in this offense.

We reiterate that the concept of actual innocence does not translate in a logical way to the factfinder's determination of what punishment to assess within a legislatively prescribed term of years. None of this is to say that principles of due process do not apply at the punishment phase of a non-capital trial. In some future case in which newly discovered or newly available evidence arises that casts substantial doubt upon the reliability of the sentencer's assessment of a particular term of years, we may well hold that the accused should receive a new punishment proceeding. But not on the facts of this case.

## CONCLUSION

For the reasons given, we decline to follow the convicting court's recommendation that the applicant be granted a new punishment hearing. The relief sought is therefore denied.[30]

HOLCOMB, J., filed a dissenting opinion in which WOMACK and JOHNSON, JJ., joined.

HOLCOMB, J., dissenting, in which WOMACK and JOHNSON, JJ., joined.

I respectfully dissent. As the majority admits, "the evidence now preponderates to show and the State seems to concede" that "applicant was only the wheel-man in the instant offense" and not the shooter. Maj. Op., p. 322, fn.3. That being the case, it is apparent to me that applicant's jury, when it assessed his punishment at imprisonment for 55 years for the aggravated robbery of a drug dealer, was materially

---

**26.** *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

**27.** *See* note 3, *ante.*

**28.** It is true that his co-defendants each received thirty-year sentences. But they each pled guilty, thus saving the State the onus and expense of full-blown jury trials. Who is to say that the applicant could not have had the benefit of such a deal had he chosen to be

truthful with his own attorney and cooperate with the State sooner than he did, rather than rolling the dice and proceeding to trial with an apparently false and uncorroborated alibi defense, seeking to avoid criminal responsibility altogether?

**29.** *See Elizondo, supra,* 947 S.W.2d at 209.

**30.** The applicant's other claims, upon which we did not file and set, are likewise denied.

misinformed with respect to the true nature of his involvement in that offense. Had the jury heard all of the evidence available today, there is a reasonable probability that it would have assessed a less-severe punishment. Practically speaking, a jury is not going to give that amount of time for the robbery of a drug dealer. For that reason, the Fourteenth Amendment's guarantee of due process requires that applicant be awarded a new punishment hearing.

The majority, in my opinion, unduly penalizes applicant for not informing his attorney, until it was too late, about the true extent of his involvement in the offense. I further fault the majority for not giving sufficient deference to the trial court's determination that applicant should be given a new punishment hearing, especially when the State seems to agree that applicant was not the shooter.

In *Ex parte Rich*, 194 S.W.3d 508 (Tex. Crim.App.2006), we granted habeas corpus relief in a case in which the applicant had pled guilty to a driving-while-intoxicated charge and "true" to an enhancement paragraph that had been pled as a felony but, it was later discovered, had been reduced to a misdemeanor. The net result was that the applicant was granted a new trial on punishment because of misinformation regarding punishment. The instant case also involves misinformation regarding punishment.

Both the United States Supreme Court and this Court, in discussing post-conviction claims of actual innocence, have recognized that the legitimacy of punishment is inextricably intertwined with guilt. *Herrera v. Collins*, 506 U.S. 390, 422, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (Blackmun, J., dissenting); *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex.Crim.App.1996). Other states have authorized a new trial on punishment when it appears that, had the jury heard all of the evidence, there is a reasonable probability the jury would have assessed a less-severe punishment. *See State v. Bilke*, 162 Ariz. 51, 781 P.2d 28 (1989); Ariz. R.Crim. Proc. 32.1(e); Ala. R.Crim. Proc. 32.1(e)(4).

Recently, this Court, in *Ex parte Carmona*, 185 S.W.3d 492 (Tex.Crim.App. 2006), decided that the applicant's unadjudicated community supervision had been revoked without due process of law because it had been revoked "solely on the basis of perjured testimony." I believe that the punishment hearing in a criminal jury trial is similar to a hearing on adjudication and punishment. In that case, it was the perjured testimony which we concluded had violated the applicant's right to due process; in this case, it was the highly prejudicial false testimony that applicant had been the shooter, which, I believe, led to the jury assessing a very harsh punishment.

Because the jury did not know applicant was not in the drug dealer's house, and believed incorrectly that he was the shooter, due process requires that we award applicant a new hearing on punishment. Because the majority holds otherwise, I respectfully dissent.