In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00216-CR


______________________________




DERAN DARCELL PEOPLES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 35603-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Deran Darcell Peoples guilty of one count of aggravated robbery (Tex. Penal
Code Ann. § 29.03 (Vernon 2003)), three counts of robbery (Tex. Penal Code Ann. § 29.02
(Vernon 2003)), and one count of burglary of a habitation (Tex. Penal Code Ann. § 30.02(c)(2)
(Vernon 2003)). He was sentenced to twenty years' imprisonment on the aggravated robbery charge
and fifteen years' imprisonment on each of the other three charges, all to run concurrently. 

 Peoples appeals, complaining that the evidence was both factually and legally insufficient
to sustain his conviction and claiming, further, that the sentences he received were disproportionate
to the offenses of which he was convicted.

FACTS

 Each of the charges arise from an event which occurred in Longview, Gregg County, Texas,
December 29, 2006. At that time, David (sometimes called Jay or Jeremy) Baker, Holly Croxton,
and Charles Parker were all visiting with Norman Hagler in Hagler's duplex apartment, where they
had settled in to share a few beers and watch television. The four had all formerly been
acquaintances or friends in high school; Hagler and Croxton were then currently in a dating
relationship and Parker often stayed for days at a time, sleeping on the couch.

 During the evening, a knock was heard at the rear door of the residence, and Hagler answered
the knock. After he exchanged words with the visitor, Hagler related to the others that the person
at the door was asking for someone whom Hagler did not know, a circumstance that Baker described
as a little weird. This apparently made some of the occupants a bit edgy because after this, Hagler
and Parker went into the bedroom of the duplex and retrieved two pistols, Parker putting a pistol on
a table beside him, and Hagler apparently taking another into the kitchen. 

 Not long after this, the rear door of the duplex burst open and three masked assailants (two
black males and one Caucasian female) rushed in. According to Baker, one of them said, "Don't
move," and according to Croxton, they shouted, "Give us all your money and this is not a joke." 
Chaos erupted and it is difficult to tell the exact chronology of events. Hagler, who had gone into
the kitchen just before the intrusion, almost immediately turned to find one of the assailants pressing
a pistol to his temple and screaming a demand for money. Hagler wrestled the man to the ground. 
Parker grabbed the gun beside him. Gunshots almost immediately rang out and a hail of bullets flew,
Hagler estimating that there were at least fifteen to twenty shots fired. Croxton ran to the bedroom,
locked the door, climbed in the closet, and covered herself with clothes. Baker dived to the floor and
crawled behind a bar. Then, in the words of Hagler, "[I]t just happened so quick, they all run off and
then it's dead silence and everything cut off and they were gone, and Charlie [Parker] was hit." 

 With the volley of bullets which pierced the air of the duplex, amazingly, only two bullets
hit human flesh.  Parker was seriously injured with a single shot to the abdominal area. (1) Another
bullet hit one of the assailants. For reasons not explained at trial, after placing an emergency 9-1-1
call, the occupants of the duplex took the guns remaining in the house and restored them to their
previous site under the bed in the bedroom. None of the occupants of the duplex could describe the
assailants other than to indicate that there were two black men and one white woman.  Parker could
remember nothing at all of the incident, but testified as to his debilitating injuries sustained by the
gunshot wound. 

 Within a short time after the emergency 9-1-1 operator received the call concerning the above
events and requesting an ambulance for Parker, Longview police were notified that a dead body had
been discovered beside an automobile parked in the parking lot at the Hidden Hill Apartments, only
about one-fourth of a mile from Hagler's duplex. 

 The resulting investigation showed the body to be that of George Sanders, killed by a wound
inflicted by a bullet from a .45 caliber gun, the same caliber gun used by Parker during the attack on
the duplex. Also in the bloody interior of the automobile were a partially-crushed A&W root beer
can and a .38 caliber pistol. Tests revealed that the pistol taken from the car was the same one fired
at Hagler's apartment by the assailants, the blood on the side of the root beer can bore Peoples's
thumb print, (2) and the bullet which killed Sanders was fired from the gun used by Parker during the
attack on the Hagler duplex.

 Over a month after the incident and after he heard that he was being sought by the authorities,
Peoples contacted the police and, after having been provided with the requisite warnings, consented
to a taped interview. In the taped interview which was played for the jury, Peoples admitted having
been present with Sanders at Hagler's duplex on the night of the shooting. However, his story varied
substantially from that of the occupants of Hagler's duplex in that he denied ever having entered the
apartment or having made any demands on the occupants. According to Peoples, he had been riding
around in a car with Sanders (whom Peoples characterized as his "home boy" and with whom he
often spent the night) and smoking marihuana. The two encountered a white girl (whose name
Peoples indicated that he did not remember) at a party and the three of them decided to restock their
marihuana. The girl indicated that she knew a place where marihuana could be bought, so they got
into Sanders's car, the girl directing them to Hagler's duplex. Peoples said that he had money in his
pocket and expected to purchase the drugs. After Sanders drove the car behind the duplex, they
exited the car and the girl led, followed in line by Sanders and Peoples to the rear door of the duplex. 
As they stepped up to the open rear door, the girl entered the door and Sanders pulled out a pistol,
stepped through the back door, and grabbed one of the occupants of the duplex, who was standing
near the door. Peoples (who steadfastly maintained that he "never made it to the door sill" and never
entered the duplex) looked through the doorway and saw an occupant of the duplex, who was sitting
on a couch, reach under the couch upon which he was sitting and withdraw a pistol. When shots
rang out immediately after that, Peoples instantly ran off through the woods behind the duplex,
hurrying back to the Hidden Hills apartments, where Sanders lived. There, he discovered Sanders's
dead body in the parking lot beside the white car in which they had earlier been riding together. 
Peoples himself called the police to report the dead body.

CLAIM OF FACTUAL INSUFFICIENCY AND LEGAL INSUFFICIENCY OF THE
EVIDENCE


 When both the legal and factual sufficiency of the evidence are challenged, we must first
determine whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). Legally sufficient evidence supporting a conviction exists
if the court, after reviewing the evidence in the light most favorable to the prosecution, determines
that a rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Clewis, 922 S.W.2d at 132-33. All of the
evidence is reviewed, but evidence that does not support the conviction is disregarded. See, e.g.,
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). If the legal sufficiency challenge
is sustained, then a judgment of acquittal must be rendered. Clewis, 922 S.W.2d at 133.

 If the evidence is legally sufficient to support the verdict, we then proceed with a factual
sufficiency review. Id. In our factual sufficiency review, we evaluate all the evidence without
employing the prism of "in the light most favorable to the prosecution." Id. at 129. We consider all
of the evidence, comparing evidence that tends to prove the existence of disputed facts with evidence
that tends to disprove such facts. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).
We should set aside the verdict only when the factual finding is so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 135. In
doing so, we must be mindful that the jury is the sole judge of the weight and credibility of witness
testimony. Santellan, 939 S.W.2d at 164. Although a factual sufficiency review authorizes an
appellate court, to a very limited degree, to act as a "thirteenth juror," the appellate court must
nevertheless give the jury's verdict a great degree of deference. Steadman v. State, 280 S.W.3d 242,
246 (Tex. Crim. App. 2009) (citing Watson v. State, 204 S.W.3d 404, 416-17 (Tex. Crim. App.
2006)).

 The Texas Court of Criminal Appeals has determined that our review of both factual
sufficiency and legal sufficiency should be examined under the principles of review for a
hypothetically correct jury charge. Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). 
A hypothetically correct charge accurately promulgates the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried. Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).

 Using the hypothetically correct jury charge analysis, we first look at the things that the State 
was obligated to prove under the three robbery charges as they pertain to Peoples's actions against
Hagler, Croxton, and Baker, each in violation of Section 29.02 of the Texas Penal Code. Since the
analysis would be the same for each of these charges (except as to the identity of the victim), they
are examined together. The State needed to show that (1) Peoples, acting either alone or as a party
(2) during the course of a theft (3) intentionally or knowingly (4) placed Hagler, Croxton, and Baker
in fear of imminent bodily injury or death. 

 Applying the hypothetically correct jury charge analysis to the aggravated robbery charge as
it pertains to his actions against Parker in violation of Section 29.03 of the Texas Penal Code, it was
necessary for the State to prove that (1) Peoples, acting either alone or as a party (2) during the
course of a theft (3) intentionally, knowingly, or recklessly (4) caused bodily injury to Parker, and
(5) the injury to Parker was a serious bodily injury. 

 Proceeding to the burglary charge, under the hypothetically correct jury charge analysis, we
find that in order for the State to prove its charge that Peoples was guilty of violating Section
30.02(c)(2) of the Texas Penal Code, it was incumbent on the State to show that (1) Peoples,
(2) without the effective consent of the owner, (3) entered (4) a habitation (5) with the intent to
commit (or committed or attempted to commit) a felony other than felony theft. 

 The jury was instructed on the law of parties. 

 The testimony of the three occupants of the duplex who could remember the incident
established affirmatively that the duplex was the residence or habitation of Hagler, that the assailants
stormed the place demanding money, that at least one of the assailants was armed, that each of the
occupants was terrified, that Parker was seriously wounded by gunfire, and that at least Sanders and
the white girl accompanying Sanders and Peoples entered the duplex without the consent of the
occupants. 

 Peoples's interview affirmed that entry was made into the duplex by at least two of the three
people in his group, that Sanders pulled a gun and made demands, and that gunfire erupted. 
Peoples's sole argument in his defense was that he was unaware that any robbery was planned by
Sanders and/or the white girl accompanying them and that Peoples neither entered the duplex nor
handled a weapon. 

 The jury could infer Peoples's intent to participate with Sanders in the illegal activity from
the circumstances which they heard described. They chose to disbelieve his avowals of surprise that
had Sanders produced a gun from apparent nothingness. 

 A rational trier of fact could have easily found the essential elements of each of the offenses
beyond a reasonable doubt. The factual findings necessary to support the verdicts are not so against
the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly,
the evidence was both legally sufficient and factually sufficient to sustain the verdict of the jury.

CLAIM OF DISPROPORTIONATE SENTENCING

 Texas courts have traditionally held that so long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Peoples's
sentences on all of the charges fall within the ranges set by law. (3)
 However, that single test does not
end the inquiry. A prohibition against grossly disproportionate punishment survives under the
Eighth Amendment to the United States Constitution apart from any consideration of whether the
punishment assessed is within the range established by the Legislature. U.S. Const. amend. VIII;
see Solem v. Helm, 463 U.S. 277, 290 (1983); Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J.,
plurality op.); Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.); Lackey
v. State, 881 S.W.2d 418, 420-21 (Tex. App.--Dallas 1994, pet. ref'd); see also Ex parte Chavez,
213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006) (describing this principle as involving a "very
limited, 'exceedingly rare,' and somewhat amorphous" review).

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Lackey, 881 S.W.2d at 420-21. In light of Harmelin, the test has been reformulated as an
initial threshold comparison of the gravity of the offense with the severity of the sentence, and then,
only if that initial comparison created an inference that the sentence was grossly disproportionate to
the offense should there be a consideration of the other two Solem factors: (1) sentences for similar
crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.
McGruder, 954 F.2d at 316; Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.--Texarkana 2006,
no pet.); Lackey, 881 S.W.2d at 420-21.

 Rather than these relevant factors, Peoples's sole arguments on appeal that the sentence
received by him was disproportionate were: (1) that although Peoples was twenty-seven years old,
he had never been convicted of a felony; (2) Peoples expressed remorse during his taped interview
that one of the victims had been injured so severely; (3) that Peoples was not the "shooter" who had
inflicted the injury; and (4) that Peoples claimed ignorance that Sanders, his "home boy," intended
to commit any crime. 

 Although Peoples filed a motion for new trial wherein he included the claim of
disproportionate sentencing, he presented no evidence to that effect. As a prerequisite to presenting
a complaint for appellate review, the record must show that the complaint was made to the trial court
and that the trial court either ruled or refused to rule on that complaint. Tex. R. App. P. 33.1(a). The
complaint must be sufficiently specific to make the trial court aware of the grounds of the complaint.
Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). A motion for new trial is but a
pleading and the allegations therein do not prove themselves, but must be proved. Zaragosa v. State,
588 S.W.2d 322 (Tex. Crim. App. [Panel Op.] 1979); Mackey v. State, 480 S.W.2d 720 (Tex. Crim.
App. 1972). The burden of proof is on the movant in a motion for new trial. No proof was provided
to the trial court. Therefore, even had the burden been met at the appellate level to show the
imposition of a disproportionate sentence, this claim is not adequately presented for appeal. (4)

 We affirm. 



 Bailey C. Moseley

 Justice


Date Submitted: July 30, 2009

Date Decided: July 31, 2009


Do Not Publish


1. Parker was hospitalized for about two weeks, receiving some eighty units of blood. The
bullet had gone through his sciatic nerve, severing the nerve serving his left leg, and damaged his
aorta. At trial, almost two years later, Parker was still forced to use a cane to walk and continued to
suffer extreme pain. 
2. Peoples's fingerprints were already on file with the police department.
3. Aggravated robbery is a first-degree felony (Tex. Penal Code Ann. § 29.03); robbery is
a second-degree felony (Tex. Penal Code Ann. § 29.02); and burglary of a habitation is a first-degree felony (Tex. Penal Code Ann. § 30.02(c)(2)). A first-degree felony is punishable by
imprisonment for life or for any term of not more than ninety-nine years or less than five years and/or
a fine of not more than $10,000.00. Tex. Penal Code Ann. § 12.32 (Vernon 2003). A second-degree felony is punishable by imprisonment for any term of not more than twenty years or less than
two years and/or a fine of not more than $10,000.00. Tex. Penal Code Ann. § 12.33 (Vernon
2003).

4. We note that even if Peoples's arguments of disproportionate sentencing made on appeal had
been presented to the trial court and an adverse ruling been obtained, the arguments fall very short
of the requirements to demonstrate that Peoples received disproportionate sentences.