

# NUMBER 13-17-00330-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DELIZA MENDOZA,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 105th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION
### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Benavides

By one issue, appellant Deliza Mendoza appeals her convictions for aggravated assault and retaliation, a second-degree and third-degree felony respectively. *See* TEX. PENAL CODE ANN. §§ 22.02, 36.06 (West, Westlaw through 2017 1st C.S.). Mendoza alleges her sentence amounted to cruel and unusual punishment and was grossly disproportionate. We affirm.

# I.     BACKGROUND

In 2014, Mendoza was charged by indictment with two counts of aggravated assault and two counts of retaliation and pleaded guilty to all four counts. *See id.* The trial court sentenced her to ten years' deferred adjudication probation.

In 2016, the State filed its first amended motion to adjudicate. Prior to any hearings on the first motion, the State filed its second amended motion to adjudicate. The allegations in the second motion to adjudicate included the following: (1)(a) Mendoza committed the offense of tampering with a witness, *see id.* § 36.05 (West, Westlaw through 2017 1st C.S.); (1)(b), (c) she committed aggravated assault, *see id.* § 22.02; (1)(d), (e) she committed criminal mischief in the amount of more than $750 but less than $2500, *see id.* § 28.03 (West, Westlaw through 2017 1st C.S.); (1)(f) she committed the offense of resisting arrest, *see id.* § 38.03 (West, Westlaw through 2017 1st C.S.); (8)(a)(b)(d) she failed to pay court costs, fines, and a monthly supervision fee; (10)(d), (d), (d) she failed to attend anger management class; and (11)(b) she failed to complete community service hours.

At the revocation hearing, the State presented evidence from Eva De La Garza, Mendoza's probation officer; Luis Villagomez, the Corpus Christi Police officer who cited her for resisting arrest, *see id.*; Benecio (Benny) Cabrera, one of the complainants in the alleged aggravated assault, *see id.* § 22.02; and Ruby Telemontes, the complainant in one of the criminal mischief allegations, *see id.* § 28.03. Mendoza testified in her own defense.

De La Garza testified that Mendoza had a large past-due balance with probation and rarely made payments as required. In addition to the monetary allegations, De La Garza stated that Mendoza had completed no community service hours or anger management classes as ordered. De La Garza said Mendoza explained that she had thyroid cancer and was having issues with her daughter. She never brought documentation or medical excuses from her physician asking to excuse her from certain requirements of probation. De La Garza agreed that Mendoza did report as ordered to probation and had negative urinalysis tests.

Officer Villagomez explained he was called out in reference to an assault. On arrival, Officer Villagomez realized Mendoza, the reporting party, was the suspect for whom other officers were searching. Officer Villagomez placed Mendoza under arrest, and she requested medical treatment. After the medical staff cleared her, Officer Villagomez and his partner attempted to take Mendoza to the city jail. Mendoza began fighting them and resisted arrest by placing her leg in the wheel well of Officer Villagomez's vehicle and throwing herself on the ground. Additional officers were called to assist them, and Mendoza was finally loaded into Officer Villagomez's police vehicle. Upon arriving at the city jail, Mendoza proceeded to spit on items in the front seat of Officer Villagomez's vehicle.

Cabrera testified regarding the aggravated assaults alleged in the motion to adjudicate. Cabrera stated that Mendoza had dated his father. Cabrera had taken his father and grandmother, Delia, to work, and when he arrived back at the home, Mendoza was sitting in the living room. There was damage to the front and back doors of the

3

home. Cabrera picked up his grandmother and the landlady and returned to the home. He stated when they entered the home through the back door, Mendoza confronted them holding a knife. Cabrera explained she was waving the knife, making stabbing motions at them. Also, there was extensive damage to a television inside the home. Cabrera and Mendoza got into a verbal altercation, and when Cabrera went into a bedroom and closed the door to get away from Mendoza, she stabbed the door with the knife. Cabrera testified that he feared for his safety and that of the women based on Mendoza's behavior. After Mendoza calmed down, she allowed Cabrera to walk out of the room and leave the house.

Telemontes testified that Mendoza took a hammer to the back windshield and trunk of her BMW vehicle. Telemontes explained that when Mendoza was hitting her vehicle, Telemontes, Delia, and two minor children were inside the vehicle. Telemontes stated while Mendoza caused over $4000 in damages, her family was able to repair the damage for $300.

Mendoza testified that while she knew she owed money to probation, she could not work due to her thyroid cancer. She also stated she had a doctor's excuse for not performing the community service hours. Regarding the aggravated assault with Cabrera, she stated she was listed on the lease for the home, Cabrera was not, and she wanted Cabrera to leave because she had found illegal drugs in his room. Mendoza also stated that she was never going to stab Cabrera. Mendoza claimed she did not destroy Telemontes's vehicle and did not resist arrest. However, Mendoza did agree with the State that she put the "nicks" in the door of the home with a knife when Cabrera was in

4

the room.

The State abandoned allegation (1)(a). After hearing the evidence, the trial court found allegations (1)(b), (e), (f); (8)(a), (b), (d); (10)(d), (d), (d); and (11)(b), (b) true. The trial court found the remaining allegations not true, and adjudicated Mendoza's deferred adjudication probation. The trial court sentenced Mendoza to twenty years' imprisonment on the aggravated assault counts and ten years' imprisonment on the retaliation counts in the Texas Department of Criminal Justice–Institutional Division. This appeal followed.

## II.    EXCESSIVE SENTENCING

By her sole issue, Mendoza argues that the trial court's sentence of imprisonment constituted a constitutionally excessive sentence.

### A.    Applicable Law

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Even though within the range permitted by law, a sentence may nonetheless be disproportionate to the gravity of the offense. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006).

To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling. TEX. R. APP. P. 33.1(a). A party's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for the purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996);

5

*Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.").

**B.      Discussion**

Generally, punishment assessed within the statutory range is not subject to a challenge for excessiveness.    *Lawrence v. State*, 420 S.W.3d 329, 333 (Tex. App.—Fort Worth 2014, pet. ref'd).    When community supervision is revoked, the trial court may generally impose any punishment within the range authorized by statute.    *See id.*    When reviewing excessiveness in a case in which the trial court has revoked probation, we do not weigh the sentence against the gravity of the violations of the community supervision, but rather the gravity of the initial offense to which the appellant pleaded guilty.    *See id.*; *Buerger v. State*, 60 S.W.3d 358, 365–66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that appellant's sentence rests upon adjudication of guilt for crime alleged, not appellant's violation of community supervision requirements that led to revocation).

Having reviewed the record, we note that appellant did not object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion. *See* TEX. R. APP. P. 33.1(a); *Arriaga v. State*, 335 S.W.3d 331, 334 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).    Mendoza's counsel did address the court prior to sentencing and state that he did not agree with the State's request for the maximum

6

sentence because the allegations were not that egregious. However, following the determination of sentencing by the trial court, counsel made no objection.[1] Accordingly, appellant has waived any error for purposes of appellate review. *See Rhoades*, 934 S.W.2d at 120; *Noland*, 264 S.W.3d at 151. Mendoza's sole issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of August, 2018.

---

[1] Additionally, Mendoza wrote a letter requesting this Court grant her a "change of venue" so that she may receive "due process, a fair chance at an appeal, and to appointed counsel." However, there is no indication that this was received or presented to the trial court as a motion for new trial. *See Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012); *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009).