**AFFIRMED and Opinion Filed June 27, 2019**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00821-CR**

**JESTINE ABRAHAM, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1840107-N**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

Appellant Jestine Abraham pleaded guilty to stalking his ex-wife, and the trial court sentenced him to five years' confinement. In two issues, Abraham argues the trial court denied him his common law right to allocution and imposed a grossly disproportionate punishment in violation of the Eighth Amendment. We affirm.

## Background

Abraham and Wife divorced in September 2017 after twenty-two years of an arranged Indian marriage. They had a daughter and son.[1]

Wife lived the entire marriage in fear and suffered physical and mental abuse. In 2001, she called police after Abraham chased the children around the street threatening to harm them. She

---

[1] At the time of Abraham's guilty plea and punishment hearing, Daughter was twenty-one and Son was sixteen.

obtained an emergency protective order that was valid for three months against him, but he did not abide by it. He followed her, sent threatening text messages, and left repeated voicemails. She often saw him waiting outside their home. He begged her for another chance, and she agreed. Unfortunately, Abraham did not change, but continued his abusive behavior.

In May 2017, he acted aggressively towards Wife when she tried to leave the house. He grabbed her hair and threatened to kill her with a knife. She had previously hidden the knives so he could not find one to carry out his threat. She contacted her parents, and they intervened to calm Abraham down. She did not call police because she feared retaliation.

In June 2017, Abraham left a threatening voicemail. He said he did not care about going to jail if anything happened to her. In July, she obtained another protective order that lasted for two years.

Abraham violated the second protective order in September. On September 11, 2017, he parked his car in their driveway while he talked to a neighbor. His car blocked Wife from leaving for work. Abraham was arrested, but continued contacting Wife from jail through letters. Once released, he left threatening messages and in one, described how he could kill her in such a way that no one would ever know what happened to her.

On December 20, 2017, Wife's van was vandalized and all the windows were broken out. Abraham left a voicemail on Daughter's cell phone taking responsibility and claiming "that's only the beginning." Wife and Children then moved out. About a week later, a neighbor called the police when someone broke a house window. Wife believed it was Abraham "because there's no one else who can do that."

Abraham was arrested in January 2018 and continued to contact Wife through letters. On June 29, 2018, the trial court conducted a hearing.

Wife testified she was afraid for her children because Abraham had physically and mentally abused them. She explained Abraham was diagnosed with bipolar disorder about seven years ago, but was "hit or miss" taking his medication because he denied having metal health problems. She described him as two different people. He acted normal one moment and then become angry and violent the next. She also described him as an aggressive alcoholic. She testified to one incident in which he took kerosene and tried to burn down their home in India.

Daughter testified and described physical abuse that began when she was five years old. Abraham hit her with belts, tried to choke her, and tried to get a knife to hurt her but could not find one. He told her he could easily kill her and have another child. She received psychotherapy because of the constant worry about Mother's health and safety.

Son testified he witnessed Abraham's abuse towards Mother for as long as he could remember. Abraham had been physically abusive towards him in the past but not recently. He also received letters from Abraham from jail.

Abraham testified he would stay away from his family and take his medication if given probation. He claimed he and Wife had a happy marriage until her parents got involved and wanted them to move next door to Wife's brother. He said Wife's brother was the aggressive one. He claimed Daughter gave false testimony to police causing his arrest. He also said he never harmed or killed anyone, abided by the rules, and was very religious.

The trial court accepted Abraham's guilty plea and sentenced him to five years' in prison. This appeal followed.

## Common Law Right To Allocution

In his first issue, Abraham complains the trial court denied him the common law right to allocution. As a prerequisite to presenting a complaint for appellate review, the record must show that the specific complaint was made to the trial court. *See* TEX. R. APP. P. 33.1(a). Any right of

allocution must be preserved by making a timely and specific objection in the trial court and obtaining a ruling. *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g) (concluding appellant failed to preserve his right to common law allocution by failing to object prior to the trial court imposing sentence). Abraham did not object at trial on the ground he was denied a common law right of allocution, and therefore, he failed to preserve error. *See King v. State*, No. 05-18-00286-CR, 2019 WL 2283882, at *4 (Tex. App.—Dallas May 29, 2019, no pet. h.) (mem. op., not designated for publication); *Williams v. State*, No. 05-16-01305-CR, 2018 WL 1373953, at *4 (Tex. App.—Dallas Mar. 19, 2018, no pet.) (mem. op., not designated for publication). We overrule Abraham's first issue.

To the extent Abraham mentioned the "potential denial" of his common law right to allocution in his motion for new trial, the argument was neither timely nor definitive to satisfy the preservation requirements of rule 33.1. *See Gallegos-Perez v. State*, No. 05-16-00015-CR, 2016 WL 6519113, at *2 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication) ("[T]o complain on appeal of the denial of a right to allocution, whether statutory or one claimed under the common law, a defendant must timely object."). Moreover, while "an appellant may raise a sentencing issue in a motion for new trial for the first time" on appeal, he may do so "only if the appellant did not have the opportunity to object in the punishment hearing." *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *Gale v. State*, No. 05-17-00595-CR, 2018 WL 3434511, at *7 (Tex. App.—Dallas July 17, 2018, pet. ref'd) (mem. op., not designated for publication). Abraham had the opportunity to object prior to sentencing and failed to do so. We overrule his first issue.

**Eighth Amendment**

In his second issue, Abraham argues his five-year sentence is a grossly disproportionate punishment in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The State responds the record does not support an inference of disproportionality.

The concept of proportionality is embodied in the United States Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense. U.S. CONST. amend VIII. But, this is a narrow principle that does not require strict proportionality between the crime and the sentence. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Id*. While the United States Supreme Court has acknowledged the lack of clarity in its precedent regarding what factors may indicate gross disproportionality, it has nevertheless emphasized that a sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case. *Id*. at 323 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). Moreover, the Texas Court of Criminal Appeals has traditionally held that punishment assessed within the statutory limits is not excessive, cruel, or unusual. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006).

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for

the same crime in other jurisdictions. *Graham*, 560 U.S. at 60. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Id.*

Abraham argues his five-year sentence is grossly disproportionate to his crime because the undisputed evidence shows that although he suffers from legitimate and serious mental health issues, he has no prior convictions of any kind.

Initially, we note punishment for a third-degree felony, which includes stalking, is two to ten years. *See* TEX. PENAL CODE ANN. §§ 12.34(a), 42.072(b). Abraham's five-year sentence falls within the statutory range for the charged offense, and therefore, is presumptively neither cruel nor unusual. We must, however, review whether his punishment is proportionate to the underlying offense. *Graham*, 560 U.S. at 60.

Although the record does not include any prior convictions, the record establishes Abraham repeatedly ignored and violated protective orders issued against him. During these violations, he threatened and sometimes acted violently towards Wife. He threatened to kill her in such a way no one could find her. He grabbed her hair and threatened to kill her with a knife, but could not find one. He damaged property on more than one occasion. He left Daughter a voicemail after smashing out van windows admitting he did it and saying it was only the beginning. He continued contacting Wife from jail by sending letters. He had previously threatened the children. All three testified they feared what could happen if Abraham received probation. Abraham had disrupted their lives to the point of Daughter needing psychotherapy, the family moving, and Son changing schools. Son testified, "The past six months that he's been in prison have been the most peaceful that our family has had."

Despite Abraham's bipolar diagnosis approximately eight years ago, he failed to regularly take prescribed medication to improve his mental health. Moreover, Wife testified he denied

having mental health issues. Regardless, Wife testified the physical and emotional abuse started before his bipolar diagnosis. Thus, Abraham's behavior and outbursts were common-place during their twenty-two years of marriage and escalated as time passed. They were not isolated incidents in which he missed a dose of medication and became violent. Instead, the record shows a man who continued a pattern of physical and emotional abuse that culminated in stalking. Yet, he believed he followed rules and had not harmed anyone. His testimony indicated a lack of responsibility for his actions and a lack of understanding of how his harmful behavior scared and impacted his family. He minimized his behavior and made excuses. Given these circumstances, Abraham's five-year sentence is not grossly disproportionate given his culpability and the harm caused or threatened to Wife. *Simpson*, 488 S.W.3d at 323. As such, there is no need to compare his sentences to sentences imposed on others. *Id*. Abraham's second issue is overruled.

## Conclusion

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
Tex. R. Ap. P. 47.1
180821F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JESTINE ABRAHAM, Appellant

No. 05-18-00821-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1840107-N.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 27, 2019