# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-19-00403-CR**
**NO. 03-19-00426-CR**

---

**Quincy Davis, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY**
**NOS. D-1-DC-18-500247 & D-1-DC-18-500248,**
**THE HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In two cases consolidated for trial, a jury convicted appellant Quincy Davis of the offenses of aggravated robbery and robbery. *See* Tex. Penal Code §§ 29.02, .03. Davis elected to have the district court assess punishment, and the district court sentenced Davis to fifteen years' imprisonment for each offense, with the sentences to run concurrently. In a single point of error on appeal, Davis asserts that his sentences were disproportionate to the charged offenses. We will affirm the judgments of conviction.

## BACKGROUND

The State charged Davis with committing two aggravated robberies in the early morning hours of May 11, 2018. At trial, the jury heard evidence that the robberies were

committed at Community First Village, a community that serves individuals transitioning out of homelessness. Davis was a former resident of the community. The victims were current residents Fred Ojeda and Stephen Sleeper, both of whom were 64 years old at the time of the robberies.

Ojeda testified that at approximately 2:30 a.m., as he was walking to his house, he noticed somebody walking behind him and "getting closer." When Ojeda opened his front door, this person, identified in court as Davis, pushed Ojeda into the house, causing Ojeda to fall forcefully onto his bed and bruise his knee. Davis then pressed a folding knife or some other sharp object to Ojeda's throat and demanded money. Ojeda gave Davis fifteen dollars, and Davis left the residence, threatening Ojeda that "[i]f you tell anyone about this, I'm going to come back."

Approximately twelve minutes later, Davis knocked on the door to Sleeper's residence. Sleeper, who is physically disabled and uses a wheelchair for mobility, testified that he answered the door and recognized Davis, who had done odd jobs for Sleeper in the past. Sleeper let Davis into his house, whereupon Davis pressed his arm against Sleeper's neck, hit Sleeper in the head when Sleeper began screaming for help, and demanded money. Sleeper gave Davis three dollars, and Davis left the residence.

Ojeda and Sleeper each called the police to report the incidents. Officers interviewed them and documented their injuries, photographs of which were admitted into evidence. Ojeda had an abrasion below his right knee and a red mark between his chin and his throat. Sleeper had a red mark over his eyebrow and a red mark on his neck, near his throat.

The jury found Davis not guilty of aggravated robbery but guilty of the lesser-included offense of robbery against Ojeda. The jury found Davis guilty of aggravated robbery

2

against Sleeper (aggravated due to Sleeper's status as a "disabled person"). At the punishment hearing before the district court, Davis pleaded true to an enhancement paragraph alleging a prior conviction for the offense of evading arrest. The district court admitted into evidence copies of pen packets showing that Davis also had prior convictions for the offenses of burglary of a habitation in 1991, 1997, and 2002; burglary of a building in 1999; and assault-family violence in 2010. The district court also admitted into evidence a "determination of intellectual disability report" on Davis showing that he had a "moderate intellectual disability" and medical records showing that Davis had a history of mental illness. The district court sentenced Davis to 15 years' imprisonment for the robbery offense and 15 years' imprisonment for the aggravated-robbery offense, with the sentences to run concurrently. Davis later filed an amended motion for new trial, which was overruled by operation of law. This appeal followed.

## DISCUSSION

In his sole point of error, Davis asserts that his sentences were disproportionate to the seriousness of the charged offenses. According to Davis, he should not have received "fifteen years for stealing eighteen dollars."

As an initial matter, the State argues that Davis failed to preserve this point of error for our review. We agree. "Ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court." *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) (citing Tex. R. App. P. 33.1(a)). "A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced." *Id.* When an appellant does not have an opportunity to object at the punishment hearing, "an appellant may preserve a sentencing issue by raising it in a motion for new trial." *Id.* at 577 & n.4.

Here, Davis failed to raise any complaint regarding his sentence either at the time it was pronounced in open court or later in his amended motion for new trial (he also did not raise the issue in his original motion for new trial). Accordingly, Davis has failed to preserve his complaint for review. *See* Tex. R. App. P. 33.1(a).

Moreover, even if this complaint had been preserved, we could not conclude on this record that Davis's sentences were "grossly disproportionate" to his offenses. "The concept of proportionality is embodied in the Constitution's ban on cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing U.S. Const. amend VIII). "But, this is a narrow principle that does not require strict proportionality between the crime and the sentence." *Id*. (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion)). Generally, "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *Id*. at 323 (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)).

"To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Id*. (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). In most cases, the analysis ends there. However, "[i]n the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and

4

with the sentences imposed for the same crime in other jurisdictions." *Id*. "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id*.

In this case, Davis was convicted of two offenses, aggravated robbery and robbery. The aggravated robbery was a first-degree felony enhanced by a prior felony conviction. *See* Tex. Penal Code § 29.03(b). Accordingly, the range of punishment for that offense was imprisonment for "life, or for any term of not more than 99 years or less than 15 years." *Id*. § 12.42(d). Davis was sentenced to 15 years' imprisonment for that offense, the statutory minimum. Moreover, because the robbery was aggravated, Davis could not have been placed on community supervision for that offense. *See* Tex. Code Crim. Proc. art. 42A.054(11).

The robbery was a second-degree felony enhanced by a prior felony conviction. *Id*. § 29.02(b). The range of punishment for that offense was imprisonment "for life or for any term of not more than 99 years or less than 5 years." Tex. Penal Code § 12.32(a). Davis was sentenced to 15 years' imprisonment for that offense, which is at the lower end of the punishment range. The sentence for the robbery offense was to be served concurrently with the sentence for the aggravated-robbery offense.

Additionally, although Davis claims that these were not serious offenses because he stole fifteen dollars from one victim and three dollars from another, the circumstances of the offenses included more than the amount of money stolen. The victims were two men in their 60s, both of whom were attempting to transition out of homelessness and one of whom was physically disabled and in a wheelchair. Davis robbed the victims in their homes late at night, using his relationship with Sleeper to gain entry into his home and forcing his way into Ojeda's home. Davis also assaulted and threatened both victims during the robberies. He knocked Ojeda

forward onto his bed and held a knife or other sharp object against his throat. He pressed his arm against Sleeper's neck and hit him in the head when Sleeper began screaming. Davis's actions visibly injured both victims. Moreover, Davis had an extensive criminal history that included a conviction for assault-family violence and multiple convictions for burglary of a habitation. Finally, there is nothing in the record to suggest that as a result of Davis's intellectual disability or his history of mental illness, his mental state at the time of the offenses was such that he was not culpable for the robberies that he committed. On this record, we cannot conclude that Davis's sentences were "grossly disproportionate" to his offenses, even if we were to assume that Davis preserved this issue for review.

We overrule Davis's sole point of error.

## CONCLUSION

We affirm the district court's judgments of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   January 8, 2020

Do Not Publish

6