**Opinion filed March 23, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00191-CR

_____

## DAVID MICHAEL KELLER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 13033**

## M E M O R A N D U M   O P I N I O N

Appellant, David Michael Keller, was found guilty by a jury of the second-degree felony offense of failing to stop and remain at the scene and render aid after being involved in an accident that resulted in the death of another. *See* TEX. TRANSP. CODE ANN. § 550.021(c)(1)(A) (West 2021). The jury assessed Appellant's punishment at eighteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Appellant challenges the sufficiency

of the evidence to support his conviction and claims his term of punishment violates the Eighth Amendment.  We affirm.

*Factual and Procedural History*

On the evening of August 18, 2019, between 9:00 p.m. and 9:15 p.m., Appellant was driving an RV on the access road of an interstate highway when he was involved in an accident.  Appellant was struggling with the knob for the headlights when he heard a noise that caused him to jerk the vehicle and subsequently pull over and get out and look around the RV.  Appellant claimed that he could not see much because it was dark and that he did not hear any noises, but that he walked around the vehicle.  Appellant later testified that the passenger side windshield of the RV must have fallen out of the front of the RV whenever he stopped, but he claimed that he did not notice this until he got back into the vehicle.

Following the accident, Appellant was involved in a traffic stop by DPS Trooper Thomas Vinson at 10:16 p.m.  Appellant was given citations for driving without a license, operating an unregistered motor vehicle, and failure to maintain financial responsibility.  In his initial discussion with the trooper, Appellant offered that he only recently had been given the used RV and that it needed "a little bit of work," including a windshield.  At no time did Appellant inform Trooper Vinson that he had been involved in an accident, possibly involving a pedestrian, only moments before.  Trooper Vinson testified that, had he known about the accident, there would have been an immediate investigation of the crash location to assess any damage or injury.

The day following the accident, Appellant spoke with a coworker and told him he hit a "branch" on I-20, which caused the damage to the RV, including the missing windshield and side mirror.  When his coworker asked Appellant how that happened, Appellant responded, "I didn't hit nobody because nobody flew into my windshield."  Appellant's coworker also testified that Appellant indicated that he did

2

not check the scene of the accident because "nobody flew into his windshield, so there was no cause for him to check if . . . he had hit somebody." Appellant denied this when he testified, maintaining that he did get out of the RV but was unable to see what he hit and that he believed he hit a tree branch or road sign.

The same day as Appellant's conversation with his coworker, Sweetwater Police Detective Dan Olds received a call that a body had been found on a service road. The cause of death was determined to be "multiple blunt-force injuries due to a pedestrian struck by a motor vehicle." During the investigation of the scene where the deceased was discovered, Detective Olds found a backpack belonging to the deceased, broken mirror pieces, a mirror body from a large vehicle, and a broken windshield. Shawn Sharrock, an expert in automotive glass, determined that the windshield was from an RV. Shortly thereafter, Detective Olds located an RV, belonging to Appellant, with a missing right-side mirror and front windshield. Appellant was located, detained, and voluntarily went to the police station to give a statement about the accident. Appellant maintained during interviews with officers and during trial that he believed that he had hit a tree branch or sign. He also indicated that he did get out of the vehicle at the scene of the accident and looked around.

*Issue One: The Evidence was Sufficient*

In Appellant's first issue, he argues that the evidence was insufficient to prove the mental state required by the statute. Appellant claims that he did not know he hit a person and, as such, the State failed to meet its burden in proving that he failed to comply with the requirements of the Transportation Code.

*Standard of Review*

We review a challenge to the sufficiency of the evidence, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89

(Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.— Fort Worth 2008, no pet.). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

*Applicable Law*

Section 550.021(a)(3) of the Texas Transportation Code requires that the operator of a motor vehicle "involved in an accident that results or is reasonably likely to result in injury to or death of a person shall . . . immediately determine whether a person is involved in the accident." TRANSP. § 550.021(a)(3). The statute also requires that the operator immediately stop at the scene of the accident or immediately return to the scene. *Id.* § 550.021(a)(1), (2). The operator of the vehicle involved must remain at the scene and comply with the requirements of Section 550.023. *Id.* § 550.021(a)(4). Section 550.023 requires that the operator of the vehicle provide, to any person injured in the accident, reasonable assistance or the arrangement of assistance of medical professionals. *Id.* § 550.023(3). If the operator of a vehicle involved in an accident does not stop or does not comply with the requirements of Section 550.021, and the accident results in the death of a person, it is a second-degree felony offense. *Id.* § 550.021(c)(1)(A).

*Analysis*

Appellant argues that because his testimony provided an alternative explanation to that presented by the State's evidence, the jury had no choice but to believe him. However, the law does not require the jury to accept any explanation or alternative theory presented by the defendant. Instead, the jury is responsible for weighing the evidence and is the sole judge of witness credibility. Credibility is the province of the jury. *Curry v. State*, 622 S.W.3d 302, 310 (Tex. Crim. App. 2019).

In viewing the evidence in the light most favorable to the conviction, we presume that the jury believed (1) that Appellant was not truthful with the DPS troopers regarding the missing windshield and, instead, concealed the fact that he was involved in an accident that had caused the windshield of his RV to be missing; (2) that the windshield's loss did not precede his ownership and did not just "pop out" of the RV without Appellant's knowledge; (3) that Appellant's testimony about

5

where he stopped the RV—on the side of the road—and where the windshield was found—in the grass—was suspicious or not credible; and (4) that the offered statements made to Appellant's coworker about not hitting a person were suspicious or were actually evidence of guilt. Further, we presume that the jury rejected Appellant's statements that he hit a tree branch or a sign and that he thoroughly investigated the scene of the accident—particularly in light of the body being in clear view at its resting place and Appellant's admission that there were actually no trees near the roadway of the access road.

The jury charge included an instruction about "mistake of fact." Had the jury believed Appellant's testimony that he reasonably believed that no person was involved in the accident or was reasonably likely to have been injured or killed by the accident, this instruction would have allowed them to find Appellant not guilty of the offense. The State had the burden to prove that Appellant did not make a mistake but, instead, failed to comply with the law. We presume, based on the evidence presented, that the jury believed, beyond a reasonable doubt, that Appellant did not comply with the requirements of the statute and that the accident caused the death of another person.

Based on the totality of the evidence presented, a rational juror could have determined that the evidence presented by the State was more credible, leading to the ultimate finding of guilt for the charged offense. We overrule Appellant's first issue.

*Issue Two: No Violation of the Eighth Amendment*

In Appellant's second issue, he alleges that his sentence is grossly disproportionate to the offense for which he was convicted and therefore constitutes cruel and unusual punishment under the Eighth Amendment.

*Applicable Law*

To preserve a complaint that a sentence constitutes cruel and unusual punishment, a defendant must first raise the issue to the trial court by a "timely request, objection, or motion" stating grounds for the desired ruling, and the trial court must either rule or refuse to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1), (2); *Jones v. State*, No. 11-19-00251-CR, 2021 WL 3413794, at *1 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op., not designated for publication). An appellant may also preserve a sentencing issue by raising it in a motion for new trial. *Jones*, 2021 WL 3413794, at *2; *Pantoja v. State*, 496 S.W.3d 186, 193 (Tex. App.—Fort Worth 2016, pet. ref'd) (holding that defendant preserved cruel and unusual punishment complaint by asserting it in timely filed motion for new trial).

When we review a trial court's sentencing determination, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We will not disturb a trial court's decision as to punishment "absent a showing of abuse of discretion and harm." *Id.* (citing *Hogan v. State*, 529 S.W.2d 515 (Tex. Crim. App. 1975)). To run afoul of the Eighth Amendment, a sentence must be grossly disproportionate to the crime. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion)). A punishment for a term of years will be grossly disproportionate "only in the exceedingly rare or extreme case." *Id.* at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). Further, a punishment that falls within the statutory range determined appropriate by the legislature for an offense will generally not be considered "excessive, cruel, or unusual." *Id.* (citing *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006)).

To determine whether a sentence is grossly disproportionate in a particular case, a court must first judge the severity of the sentence in light of the harm caused

7

or threatened to the victim, the culpability of the defendant, and the defendant's prior adjudicated and unadjudicated offenses. *Id.* at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). Although rare, when the threshold analysis leads to an inference of gross disproportionality, the court must then compare the defendant's sentence with those of others in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. *Id.* (citing *Graham*, 560 U.S. at 60).

*Analysis*

Appellant first raised his Eighth Amendment claim in his motion for new trial, effectively preserving his complaint for appellate review. *See Jones*, 2021 WL 3413794, at *2. The jury found Appellant guilty of a second-degree felony offense. *See* TRANSP. § 550.021(c)(1)(A). Second degree felonies are punishable by imprisonment for a term of not more than twenty years or less than two years. TEX. PENAL CODE ANN. § 12.33(a) (West 2019). Following the punishment phase, the jury assessed Appellant's punishment at confinement for a term of eighteen years. The punishment assessed by the jury is within the statutory range.

With respect to the threshold question—the proportionality of the sentence as compared to the gravity of the crime—Appellant argues that there was no allegation that he "did anything to cause the collision" with the victim, that the incident was merely a tragic accident, and that there was no evidence that the victim would have survived if Appellant had rendered aid to him. Appellant also points out that he is the primary caregiver for his children, helps others in his community, and has no prior felony convictions.

The punishment term of years is within the statutory range, and there are several incriminating evidentiary facts that the jury, in its discretion, may have accepted and weighed heavily in support of its assessed punishment:

1. The resting place of the body was plainly visible;

8

2. Appellant did not call for help at the time of the accident, nor did he mention an accident to the DPS trooper when given a clear opportunity to do so;

3. Appellant concealed his recent accident and the fact that the windshield had been lost in conjunction with that accident;

4. There was evidence that the backpack was actually inside the culvert drainpipe and may have been intentionally concealed;

5. There was evidence that the body may have been repositioned;

6. The windshield was found at the accident scene, and there was testimony that it had been pushed out manually after the accident;

7. The accident area was devoid of any trees or downed signs that might corroborate Appellant's claim that the impact was due to a sign or tree branch;

8. Appellant's admission to a coworker and proffered protests that "I didn't hit nobody because nobody flew into my windshield" may be construed as a he "doth protest too much" admission[1]; and

9. Appellant's admission to a coworker that he did *not* in fact check the scene of the accident for an injured person.

Taken together, as is the jury's prerogative, the death of the victim and reasonable inferences therefrom would be strong circumstantial evidence of Appellant's intentional deceptiveness and guilt. We cannot hold, under these circumstances, that Appellant's eighteen-year sentence was grossly disproportionate to the offense for which he was convicted.

Appellant provides no evidence that compares his sentence to that of others in the same jurisdiction that have been convicted under Section 550.021(c)(1)(A).

---

[1]A reference to a quote from William Shakespeare's play, *Hamlet*, act 3, scene 2. The idiom, as used here, signifies that when someone strongly denies a fact or event, *in advance*, it appears to be an effort by the person to ward off the suspicion of others, if and when that fact or event is later discovered to have occurred. *Protest too much*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/protest-too-much (last visited Mar. 21, 2023); *see also Me thinks the lady doth protest too much*, OXFORD REFERENCE, https://www.oxfordreference.com/display/10.1093/acref/9780199567454.001.0001/acref-9780199567454-e-1217;jsessionid=6AB0DDFB1702550963DF1F61BC31B2CB (last visited Mar. 21, 2023).

Because we have already concluded that his sentence is not grossly disproportionate to the offense he committed, even if Appellant had provided comparative convictions, we need not contrast his sentence to that of others. *See Simpson*, 488 S.W.3d at 323. Appellant has not demonstrated a cruel or unusual punishment assessed, under the circumstances. We, therefore, find no violation of the Eighth Amendment, and we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


March 23, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.