

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00128-CR

_____

JOHNNY ARNOLD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F22-194-462

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Johnny Arnold appeals from his conviction for indecency with a child, challenging (1) the sufficiency of the evidence to prove that he touched the complainant's genitals with the intent to arouse or gratify his sexual desire and (2) the maximum 20-year sentence imposed by the trial court. *See* Tex. Penal Code Ann. §§ 12.33(a), 21.11(a)(1), (c)(1), (d). We affirm the trial court's judgment.

## Sufficiency Standard of Review For Conviction[1]

In his first issue, Arnold challenges the sufficiency of the evidence to support the underlying conviction.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable

---

[1]Because Arnold primarily challenges the evidence's sufficiency, we will dispense with a general background section and instead begin by setting forth the proper standard of review for the underlying conviction and then summarizing the evidence adduced at trial.

doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law.").

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). Thus, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether any necessary evidentiary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## Indictment and Evidence at Trial

Arnold waived a jury, so the case was presented to the trial court. The indictment tracked the indecency-with-a-child statute and required the trial court to find that Arnold, "with the intent to arouse or gratify [his] sexual desire," engaged in

3

sexual contact with the under-17-year-old complainant by touching the complainant's genitals.

**The Complainant's Testimony**[2]

The complainant testified that when he was 15, Arnold—a long-time[3] close friend of the complainant's mother (Mother)—touched his penis. The complainant recounted the circumstances in detail. According to the complainant, he and Arnold were on the couch[4] in the complainant's home, and Arnold was rubbing oil onto the complainant's head and into his hair.[5] Eventually, Arnold moved down to feel the complainant's bicep, then his thigh, and then his penis; Arnold started rubbing the complainant's penis before grabbing it "a few times."[6] The complainant initially testified, "And then he moved down to my crotch area, and then he started using his

---

[2]Arnold bases his sufficiency argument in part on inconsistencies in the complainant's testimony. To highlight those inconsistencies—as well as to compare and contrast the complainant's testimony with the rest of the evidence—we will summarize each witness's testimony.

[3]The complainant had known Arnold about two or three years.

[4]The complainant initially testified that he was lying on the couch next to Arnold. But on cross-examination, the complainant denied having so testified and insisted that he had been sitting down on the couch with Arnold sitting next to him.

[5]According to the complainant, Mother had started the oil treatment after talking about his dry scalp; she then "handed it over" to Arnold, who continued rubbing the oil into the complainant's hair and scalp.

[6]On cross-examination, the complainant agreed that no oil mark was left on his shorts even though the scalp oil was greasy and Arnold had been using both hands to apply it.

4

thumb to play with my tip, *I guess*," but he later answered "Yes," without qualification, when asked, "So this is not just the thumb brushing up against, but this is someone holding onto the penis and moving the thumb along the tip?" [Emphasis added.]

The complainant said that Mother was present while Arnold was touching him, but she was "doing a whole bunch of things" in different locations.[7] Except for "a couple of seconds," though, she was "in the same proximity" with the complainant and Arnold.[8] The complainant testified that although he tried to get Mother's attention, she did not see what happened. Additionally, even though the complainant was both large and strong for his age, he said that he felt physically intimidated by Arnold—who was also big and was older—and that he was uncomfortable with what Arnold was doing to him. The complainant did not try to stop Arnold; he "just didn't know what to do."

On direct examination, the complainant first testified that Arnold stopped touching him when Arnold and Mother left to go to a gas station; the complainant explained that when Mother "came over," Arnold "kind of stopped a little bit" and "moved his hand a little bit . . . off." But on cross-examination, the complainant testified that Arnold stopped touching him when the complainant went to the bedroom to get his laptop and then sat back down on the couch next to Arnold with

---

[7]The approximately 1,200 square foot home had two bedrooms, two bathrooms, an open-concept living room and kitchen, and a patio.

[8]According to the complainant, Mother was looking at her laptop at times.

the laptop over his lap.[9]  The complainant admitted that he did not tell the police

about getting his laptop when they later investigated the offense.

According to the complainant, when Mother and Arnold left to go to the gas

station, the complainant wrote Mother a message[10] on her laptop, which she had left

open.  The trial court admitted a picture of the message into evidence:

> I do not want to talk about it and I did not expect it.  When [Arnold]
> was doing that massage stuff he was touching me.  He was feeling on my
> arms and chest and my crouch [sic].  He has to go home tonight to make
> up some excuse and we can deal with it later.  When you read this do not
> freak out, just take him home and get him out of the house.

The complainant also called Mother, and at one point, Arnold got on the

phone.[11]  The complainant used FaceTime's Screen Record feature to capture video

from the call.  That video recording—without audio—was admitted into evidence at

trial.[12]  The complainant testified that during the call, Arnold told him to keep the

---

[9]According to the complainant, "at that point," Mother and Arnold were "[i]n the same positions" that they had been in when Arnold was touching him.

[10]Mother testified that the message was typed in "Google docs."

[11]The complainant first testified that Arnold "grabbed" the phone from Mother, but he later testified that Mother gave Arnold the phone.

[12]The complainant testified that he could hear audio while on the call even though the video recording admitted at trial had no corresponding audio.  The investigating detective later testified that the Screen Record function on FaceTime "didn't use to have audio" and that the lack of audio recording is normal for the time when the video was made.

door unlocked that night so that he could, according to the complainant, "[j]ust continue feeling on me and doing other things, I guess."

The complainant left home before Mother and Arnold returned. When the complainant did not hear from Mother for some time, he called the police.[13] The complainant also participated in a forensic interview a week later.

**Mother's Testimony**

Mother testified that when Arnold and the complainant were in the living room together, she was cleaning around the house and spent most of that time in the kitchen. She had allowed Arnold to put oil in the complainant's hair because Arnold "used to do hair." She admitted that Arnold had been "drinking quite a bit that day," but she denied having more than one drink herself. She did not remember seeing the complainant with his laptop.

Mother confirmed that the complainant had called her via FaceTime while she was at the gas station with Arnold; Mother thought it "was a little odd" that the complainant called because he usually texted her. She also thought it was odd that Arnold stayed in the car and talked to the complainant while she was inside the store.[14] When Mother came home, she thought the complainant was in the shower

---

[13]The complainant's 911 recording was admitted into evidence. He told the dispatcher that Arnold had sexually assaulted him—"I guess"—and that it had happened about an hour before the call.

[14]Mother testified on direct that she had given Arnold the phone while she was inside the store. But on cross-examination, she denied saying that and testified that

because she heard the water running; she did not realize until later that he had left without turning off the water first. Mother found the complainant's message on her laptop.

Mother went looking for the complainant, and while she was doing so, Mother received a call from a police officer, who brought her to the complainant. The complainant was upset, "in distress[, and] shaking." He did not want to talk to her about what had happened. Mother authorized the police to give Arnold a no-trespass warning that night.

While Mother was talking to the police, she got a text from Arnold's number. A video recording of the text message was admitted into evidence[15] and reads as follows (without alteration of grammar or punctuation):

> Omg I' have been so drunk I don't even know my name I am so sorry for any indecency I have been, it's not ok I would never be that way I'm so sorry for any way I have been or acted it's a shame, I'm sorry please know it's not the way I do things so embarrassed totally I understand the trespassing it's understood, I in no way wanted this to be the order for us . . . It should've never been but drunk people do drunk things, I'm soooo sorry this should never happen…..Well now it's been settled that I must be aliminated from your life for good reason…….sorry this hurts u guys but I know it's for the best, I luv y'all and I'm ok to be away….because valid treatment u deserve . . . .

---

Arnold never got out of the car, and she had "left the phone in the car so [that she] could hurry up . . . and get back." The investigating detective later testified that Mother told her Arnold waited in the car while she went into the store.

[15]Although Mother kept the text message, she deleted Arnold's name from her contacts; thus, the exhibit shows only a phone number and not a contact name. Mother testified that she recognized the number as Arnold's.

**Responding Police Officer's Testimony**

The police officer who responded to the complainant's 911 call testified that when he arrived, the complainant "looked kind of in disbelief." The complainant told the officer that Arnold had "inappropriately touched" him. Specifically, the complainant said "that over his clothes, his genital area was touched by" Arnold. The complainant told the officer that he was unsure about what to do.

After Mother arrived, the responding officer went to the residence, and Arnold answered the door. Arnold "appeared to be intoxicated," and "he looked out of sorts[,] . . . had glassy eyes[,] . . . had the odor of . . . alcoholic beverage coming from his breath[, and] was speaking a little slow." According to the officer, "it looked like he'd just woke[n] up and had been drinking before he had gone to sleep."

Arnold was forthcoming when telling the officer what he had done earlier in the day, but he "didn't recollect" most of anything having to do with the complainant other than that Arnold had suggested an oil treatment for his hair. Arnold told the officer that he did not touch the complainant anywhere other than his head. He also denied answering Mother's phone while at the gas station.

**The Investigating Detective's Testimony**

The investigating detective testified, without objection, that she was able to watch the complainant's forensic interview and that she found the complainant credible.

9

The investigating detective also interviewed Arnold and thought that he was being deceptive.[16] Despite having told the responding officer that he did not touch anything other than the complainant's hair,[17] Arnold told the investigating detective that while rubbing the oil in the complainant's hair, he had rested his elbow on the complainant's hip and his arm across the complainant's thigh. And although he denied intentionally touching the complainant's penis, he admitted that he could have touched it accidentally. Arnold told the detective that the day of the incident was "[o]ne of the . . . times he's been most intoxicated."

According to the detective, Arnold could not consistently remember whether he went to the gas station with Mother that night. And although Arnold "was very detailed when talking about the process of twisting the [complainant's] hair, [he] then couldn't remember other parts of the night." When asked about the text he sent to Mother, Arnold told the detective that "if someone is upset with something, he's going to apologize no matter if he did it or didn't. It's just right to apologize to

---

[16]The trial court admitted a recording of this interview. Arnold's statements are consistent with the detective's testimony. He professed to being more drunk than he had ever been in his life, and he could not remember certain details such as the trip to the gas station. Yet he was able to describe in detail how he had oiled the complainant's hair and the way he was leaning on the complainant at the time, and he adamantly denied touching the complainant in any way other than accidentally. He attributed the complainant's and Mother's reactions to the possible accidental touching to Mother's past experiences and to the complainant's being offended.

[17]According to the detective, Arnold was the only person who gave inconsistent statements about what happened that night.

10

someone." Arnold told the detective that he did not think the complainant and Mother are liars; he thought that the complainant and Mother had overreacted.

## Sufficiency Analysis

In addition to pointing out inconsistencies in the complainant's testimony, Arnold bases his sufficiency challenge on two main points: (1) that the complainant's repeated use of the phrase, "I guess," when testifying shows that he was uncertain about whether or how Arnold touched his penis and, thus, that any inferences the trial court made regarding guilt were not reasonable but were instead improperly speculative; and (2) no evidence exists as to whether Arnold intended to arouse or gratify his sexual desire because no evidence showed he was actually aroused. We conclude that the evidence is sufficient to support the trial judge's finding that Arnold touched the complainant's penis with the intent to arouse or gratify his sexual desire.

First, even though the complainant frequently used the phrase "I guess" when testifying,[18] the trial judge was authorized to interpret that usage in context. Although sometimes the complainant's use of the phrase appeared to indicate uncertainty, such as when the complainant was testifying about what he did when he came home from school that day, at other times it appeared to be part of his pattern of speech—such as

---

[18]The complainant used this phrase at least 22 times. For example, when describing what he had done earlier in the day, the complainant said he went to school, came home and ate, and "then, yeah, I guess played video games" and "[d]id a little review over some math, I guess." He also said "I guess we started talking about my hair. . . . [Mother's] always talking about how, I guess, I have a dry scalp."

11

when he stated, "I guess I always have, like, a dry scalp." He used the phrase only twice when describing how Arnold had touched him, and his guesses can be reasonably interpreted to be about the exact placement of Arnold's hand and thumb when he first started touching the complainant's penis and whether Arnold was "play[ing] with" the complainant's penis before grabbing it.[19] The trial judge was entitled to believe the rest of the complainant's detailed testimony about the way Arnold touched him, which testimony is consistent with the content of the message the complainant sent to Mother that very night, the complainant's statements in the 911 call and to the responding officer, his upset demeanor that night, and the fact that the complainant left home before Mother and Arnold could return.

The trial judge also could have inferred from the complainant's and Mother's testimony about the residence's layout and about Mother's activities while the incident occurred that it was believable that Arnold had taken advantage of the situation, that Mother had not seen what he was doing, and that the complainant was so shocked that he was uncertain how to respond. Finally, the trial judge was entitled to believe from the totality of the evidence that Arnold knew what he had done and had exhibited a consciousness of guilt in his text message to Mother and in his interview with the investigating detective.

---

[19]Additionally, when asked on cross-examination which hand Arnold used to touch him, the complainant answered, "I guess, right."

Although there were some inconsistencies in the complainant's testimony and in Mother's testimony—specifically about the timing of the offense[20] and the surrounding events and whether the complainant had gotten up from the couch to get his laptop—the trial judge was permitted to resolve those inconsistencies and nevertheless believe the complainant's detailed testimony about the way Arnold touched him, as well as the other evidence supporting a finding that Arnold intentionally touched the complainant's penis.

Arnold's second sufficiency-related argument ignores well-established case law holding that in indecency cases the factfinder may infer the intent to arouse or gratify sexual desire from conduct alone as well as from remarks or other surrounding circumstances. *See Stephenson v. State*, 673 S.W.3d 370, 384 (Tex. App.—Fort Worth 2023, pet. ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981)); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) (also citing *McKenzie* and noting, "Rarely will there be direct evidence of what an accused intended at the time of the incident."). Here, Arnold's conduct while touching the complainant—starting with an innocuous touch but then gradually

_____

[20]Mother testified that Arnold and the complainant had been on the couch from around 9:30 to 10:30 p.m., but she was unsure of the exact time. She thought she and Arnold had left for the gas station at around 10:30 p.m. and were gone for 15 minutes. But the FaceTime call was recorded at 12:33 a.m. the next day, and the responding officer was dispatched to the complainant's call around 1:26 to 1:30 a.m. Mother later testified that it was possible she was mistaken about the time she and Arnold went to the gas station.

moving down the complainant's body until he touched and then grabbed the complainant's penis—as well as his later conduct—his request that the complainant leave his door unlocked that night, his text message to Mother indicating a consciousness of guilt, and his detailed recall of some events but not others in his interview with the investigating detective (despite a professed unusual intoxication level)—sufficiently supports a reasonable inference that Arnold had the intent to arouse or gratify his sexual desire when he touched the complainant's penis.

As a whole, the evidence supports the trial court's determination that Arnold acted with the intent to arouse or gratify his sexual desire when he touched the under-17-year-old complainant's penis. We therefore overrule Arnold's first issue.

## Punishment Complaint Not Preserved

In his second issue, Arnold complains about the factual sufficiency of the evidence to support the trial court's imposition of the maximum sentence of confinement for a second-degree felony conviction. But the factual sufficiency standard of review does not apply to complaints about the length of a sentence,[21] and

---

[21]Arnold's brief cites *Clewis v. State*, 922 S.W.2d 126, 128 (Tex. Crim. App. 1996), for the factual sufficiency standard of review formerly applicable to convictions. *Clewis* was overruled by *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Although Arnold's brief cites *Brooks* in the footnote immediately following the footnote in which *Clewis* is cited, there is no indication that *Clewis* has been overruled and no discussion about why it would nevertheless still be applicable to punishment challenges. *See, e.g.*, *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) ("Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the

14

such complaints must be preserved at trial for us to consider them on appeal, *see Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *see also Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) ("A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced."). Arnold did not object to the sentence in the trial court. Thus, he has failed to preserve any complaint about the sentence's length. We overrule his second issue.

## Conclusion

Having overruled both of Arnold's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 28, 2023

---

legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." (footnotes omitted)).