**Opinion filed February 29, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00076-CR

_____

## JOHNATHAN BEDFORD NEWMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR15635**

### M E M O R A N D U M   O P I N I O N

The State charged Appellant, Jonathan Bedford Newman, by indictment with one count of possession of methamphetamine in an amount of four grams or more but less than two-hundred grams, enhanced to a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West Supp. 2023); TEX. PENAL CODE § 12.42(b) (West 2019). Appellant waived his right to a jury trial and entered an open plea of guilty to the charged offense and true to the enhancement. Appellant

elected to have the trial court assess his punishment. The trial court found Appellant guilty as charged in the indictment and ordered that a presentence investigation report be completed prior to a hearing on Appellant's punishment.

At the punishment hearing, the trial court assessed Appellant's punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). The trial court ordered that Appellant's sentence run consecutively to three other pre-existing sentences, two of which were life sentences. In his sole issue on appeal, Appellant contends that the trial court did not consider his mitigation evidence offered during punishment and that the trial court did not consider the full range of punishment when determining Appellant's sentence. We affirm.

*Background Facts*

In 2010, Appellant was convicted of two first-degree felony drug offenses, namely manufacturing or delivering a controlled substance in penalty group one, and he was sentenced to confinement for life in TDCJ with both sentences to run concurrently. *See* HEALTH & SAFETY § 481.112(a), (d). Appellant served nine years in the penitentiary before being paroled on those sentences. Appellant committed the offense from which this appeal arises while on parole for the life sentences.

Officer Gary Roberts, a K9 officer with the Stephenville Police Department, conducted a traffic stop of a vehicle without a front license plate on January 20, 2021. While Officer Roberts did not know that Appellant was the driver of the vehicle at the time he initiated the stop, he recognized Appellant when he walked up to the vehicle. Officer Roberts was aware that Appellant was on parole at the time because he had talked to Appellant "on numerous other occasions."

Officer Roberts testified that he could smell an odor of marihuana emitting from the vehicle. Officer Roberts asked Appellant to step out of the vehicle and

noticed a "corner bag" in the driver's side door.[1]  Officer Roberts requested an additional unit to assist him so that he could search the vehicle.  Officer Paula Mays with the Stephenville Police Department arrived and stood with Appellant while Officer Roberts conducted the search of the vehicle.

While Officer Roberts was searching the vehicle, Officer Mays noticed a small bag of marihuana on the ground and saw Appellant attempt to hide the bag with his foot.  Officer Mays called Officer Roberts's attention to the bag and asked if he was already aware of and had located the marihuana.  Officer Roberts said that he had not, placed the marihuana on the hood of the vehicle, and continued searching it.

After Officer Roberts returned to searching the vehicle, Appellant "squatted down in front of the patrol car and was just on his phone."  When Appellant stood up, Officer Mays noticed a small bag containing methamphetamine on the ground that had not been there before.  Appellant again put his foot over the bag in an attempt to conceal it.  Right as Officer Mays noticed the second bag on the ground, Officer Roberts returned to Appellant and placed him under arrest.

Officer Roberts conducted a search incident to arrest of Appellant's person.  Officer Roberts recovered several additional large bags of methamphetamine from Appellant's person.  The field weight of the recovered methamphetamine was 79.6 grams.  Officer Roberts testified that 79.6 grams of methamphetamine was an amount "consistent with distribution" because it was "far more than a person is going to use in one sitting or at one time.  It's enough methamphetamine to - - for several people to use."  A subsequent lab test confirmed that the methamphetamine was in an amount greater than four but less than two-hundred grams.

---

[1]Officer Roberts described a corner bag as "when they put narcotics in the corner of a bag or a sack. They rip it off and tie the top of it."

At the punishment hearing, Appellant testified about his recent anxiety-disorder diagnosis and his struggles with drug addiction. Appellant recalled having anxiety issues since the age of "seven or eight" due to a difficult childhood. Appellant testified that he began using illegal substances such as marihuana and alcohol as a teenager in an attempt to "kind of take the edge off" and lessen his anxiety. Appellant said that he would use "whatever [he] could get [his] hands on . . . whatever would make [him] feel okay" throughout his teenage years, and that this habit escalated into methamphetamine and cocaine use by the age of sixteen.

Appellant testified that he was diagnosed with an anxiety disorder at the Erath County Jail while in custody for his January 21, 2021, arrest. Appellant had spoken with a psychiatrist at the jail and learned that his feelings of anxiety were not "normal." Appellant said that beginning a medication regimen to treat his anxiety disorder had improved his mental health and given him a "peaceful feeling."

Appellant explained that previous drug-addiction treatments he had received while in custody were unsuccessful because he previously "didn't believe in [drug] addiction." Appellant testified that he was consuming "[t]hree to seven" grams of methamphetamine per day when he was arrested on January 21, 2021. Appellant estimated that the amount of methamphetamine recovered at the time of his arrest would have "lasted [him] a week."

After Appellant's arrest, he began taking medication for his anxiety disorder. He also admitted that with the help of Narcotics Anonymous, he now realized that he was addicted to drugs. Appellant testified that his new knowledge of his anxiety disorder and drug addiction helped him maintain sobriety and that the trial court should grant him probation so that he could continue his recovery.

On cross-examination, the State focused on Appellant's criminal history. Appellant confirmed that he was released from custody on bail after his January 21, 2021, arrest. Appellant admitted that he was subsequently arrested on January 28,

4

2021, for evading arrest in a motor vehicle. Appellant testified that he "might have been" under the influence when he evaded arrest. Appellant said that he evaded arrest by driving away from the police at a high rate of speed because he was "in fear for [his] life" and feared returning to prison. Appellant crashed the car he was driving into a ditch and fence. Appellant began running away from the crash on foot before being detained. Appellant confirmed that the passenger in the car with him at the time of the crash was injured and that he was required to pay $10,000 in restitution for his medical bills. Prior to the punishment hearing in this matter, Appellant had pleaded guilty to evading arrest in a motor vehicle and had been sentenced to confinement for seven years.

Appellant conceded that he had been arrested multiple times between the years 2000 and 2010 and that the "only gap in [his] annual trip to jail ha[d] been the prison sentence that [he] got [t]here in Erath County in 2010." Appellant reiterated that his anxiety-disorder diagnosis and realization that he is a drug addict have encouraged him to now abide by the law.

Kristi Brock, a childhood friend of Appellant's, testified that Appellant had a difficult childhood and never had someone "in his corner to say, hey, let's go the other direction." Brock noticed that Appellant's mental health seemed to improve after he began treatment for his anxiety disorder. Brock said that she believed Appellant deserved probation because he was a good person and recovery from addiction was "achievable."

During closing arguments, the State argued that Appellant's rehabilitation attempts had been unsuccessful and requested "a significant prison sentence" that ran consecutively to Appellant's 2010 life sentences. Conversely, Appellant's trial counsel argued that Appellant had only recently been diagnosed with an anxiety disorder, that he had finally received proper treatment for his disorder, that he had finally been able to admit that he had a "serious drug addiction," and that he deserved

"a chance at rehabilitation in prison." Appellant's trial counsel requested that the trial court probate Appellant's sentence or, in the alternative, impose a sentence that ran concurrent to Appellant's 2010 life sentences.

In announcing Appellant's sentence, the trial court stated that it had considered the evidence before it, including evidence of Appellant's criminal history and the possible risk Appellant posed to himself and the public. The trial court pronounced Appellant's sentence at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice. The trial court further ordered that the sentence run consecutively to, and begin after, Appellant's other sentences.

*Analysis*

In his sole issue on appeal, Appellant contends that the trial court violated his due process rights by failing to consider the full range of punishment and imposing a "life sentence"[2] for the offense. *See* U.S. CONST. amends. 5, 14; TEX. CONST. art. 1, §§ 10, 19, & 29. Trial courts have broad discretion to determine the proper punishment in an adjudication proceeding. *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.108, .110 (West 2018), art. 42A.751(d) (West Supp. 2023); *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). A trial court's decision regarding what sentence to impose is a "normative process, not intrinsically fact bound." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Id.* at 323–24 (footnote omitted); *see State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) ("[T]his Court has traditionally held that

---

[2]By referring to the sentence imposed in this proceeding as a life sentence, Appellant is essentially suggesting that the sentence of sixty years is the functional equivalent of a life sentence.

punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual.").

However, due process requires a hearing before a neutral and detached judge who considers the full range of punishment and the evidence presented. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). A judge's arbitrary refusal to consider the entire range of punishment constitutes a denial of due process. *Grado*, 445 S.W.3d at 739. A judge who assesses a predetermined sentence denies an accused the right to due process by failing to consider the full range of evidence. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd)). Absent a clear showing of bias, we presume that the trial court's actions were correct. *See id.* (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982)).

Before pronouncing Appellant's punishment, the trial court noted that the community supervision officer who completed Appellant's presentence investigation report indicated that Appellant was not a suitable candidate for community supervision. The trial court then noted that it agreed with that assessment. The trial court also stated that it was "a believer in second chances" and rehabilitation, but that Appellant had already been given "a number of chances" throughout his life. The trial court additionally stated that it considered Appellant a risk to himself and others. The trial court further announced:

> I considered everything, I think, that's before me. I've considered the duration of your criminal history and, as I said, that started when you were 14 year old [sic], back in 2000, and it's gone on until now 2021 . . . which shows me that nowhere along the line, have you learned anything.

The trial court further stated that it also considered (1) Appellant's eleven misdemeanor arrests, six felony arrests, and multiple probation revocations; (2) Appellant's young age at the time he began committing offenses; (3) the fact

7

that Appellant received parole in 2020 and was arrested again one year later in January 2021; (4) the amount of drugs in Appellant's possession when he was arrested on January 21, 2021; (5) the fact that Appellant was arrested on January 28, 2021, after posting bail for his January 21, 2021, arrest; (6) the balance between punishment, retribution, deterrence, and rehabilitation—and that it "appear[ed to the trial court] that the laws and the punishment [Appellant] receive [sic] haven't been a deterrent" to Appellant's continuous unlawful conduct; and (7) the "high risk to the public" that Appellant presents.

Appellant asserts that the trial court did not consider his mitigation evidence regarding Appellant's "lifelong struggle with mental illness and his recent anxiety disorder diagnosis." He bases this contention on the trial court's references to his criminal record and history of drug abuse prior to pronouncing sentence. Appellant essentially contends that the trial court's failure to verbally include Appellant's anxiety disorder and drug addiction among its list of considerations in pronouncing Appellant's sentence necessarily means that there is "no evidence" that the trial court considered those things.

The record does not support Appellant's contention that the trial court refused to consider his mitigation evidence or that the trial court failed to consider the full range of punishment. We first note that prior to pronouncing the sentence, the trial court expressly stated that "I considered everything, I think, that's before me." We presume "everything" means that the trial court considered Appellant's and Brock's testimony regarding his anxiety disorder, drug addiction, and character along with evidence of his criminal record. *See Brumit*, 206 S.W.3d at 645. Appellant has not cited any authority, nor have we have found any, for his proposition that a trial court does not consider a defendant's mitigation evidence if the trial court does not expressly reference it when pronouncing sentence. To the contrary, in the absence of partiality by the trial court or a clear showing of bias, we must presume that the

8

trial court was both fair and impartial. *Brumit*, 206 S.W.3d at 644–45; *Licon v. State*, No. 11-17-00221-CR, 2020 WL 373093, at *2 (Tex. App.—Eastland Jan, 23, 2020, pet. ref'd).

Additionally, Appellant sought a probated sentence, and the trial court expressly referenced its consideration of his request for community supervision prior to pronouncing sentence. Accordingly, the record refutes Appellant's claim that the trial court did not consider the full range of punishment.

In summary, nothing in the record suggests that the trial court did not consider the full range of punishment or that it failed to consider the evidence presented on punishment. To the contrary, the record establishes otherwise. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

February 29, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.